■ 231 CENTRE STREET ASSOCIATES, Appellant, v POST BROS. SERVICE STATIONS, INC., et al., Respondents. 231 CENTRE STREET ASSOCIATES, Plaintiff, v M.G. DINER, INC., Respondent. 23 GREAT JONES L. L. C., Counterclaim Defendant-Appellant. [675 NYS2d 92] —Order, Supreme Court, New York County (Carol Huff, J.), entered April 30, 1997, which, to the extent appealed from,

denied plaintiff's motion for summary judgment ejecting defendants-respondents from the subject premises and directing the removal of the encroaching structures, unanimously affirmed, without costs.

This matter involves defendants' rights as tenants of one parcel of land and subtenants of an adjacent parcel following the expiration of the prime tenant's lease on the latter property. Plaintiff, or its predecessor in interest, 231 Centre Street Corporation, has owned the narrow, triangular parcel of land referred to as lot 17 for almost 50 years; it is bounded by Lafayette Street on the west, Great Jones Street on the north and Bond Street on the south. Lot 18, which also has a small northern border on Great Jones Street, forms a portion of lot 17's eastern boundary. As of 1972, lot 17 was leased to Post Bros. Service Stations, a corporation of the Post family that had owned lot 18 for almost 40 years until shortly after the commencement of this lawsuit.

Defendant M.G. Diner, referred to herein as the Jones Diner, has operated on its present site since 1961. It is a small, rectangular structure of barely 500 square feet, half of which sits on lot 17 and half on lot 18. The sole entrance to the diner has always been on lot 17, facing Lafayette Street; there is no access or egress on lot 18. Similarly, the sole access to the gas station (and the remaining defendants, its subtenants, all of whom are collectively referred to as the gas station defendants), which is situated on lot 18, has always been from lot 17. Except for the portion of the diner that is situated on lot 17, the latter is a predominantly vacant lot.

Over the years, pursuant to the ownership and tenancy of lots 17 and 18 described above, the diner has leased a portion of lot 18 and subleased a portion of lot 17. In 1992, the current gas station owner entered into a 15-year lease with members of the Post family for the gas station located on lot 18; simultaneously, he entered into a sublease for the same term with a related Post company, BSP Services, for that portion of lot 17 providing access to the gas station. The respective leases of the diner and the gas station for lot 18 expire in the year 2006; their respective subleases for lot 17 are for approximately the same period of time.

The prime lease for lot 17, held by Post Bros. Service Stations (Post), expired by its terms in 1984. Post remained on a month-to-month basis until it was served with a 30-day notice of termination effective March 31, 1995. When Post did not comply with the notice, plaintiff, which had acquired the property in 1986, commenced the instant action against Post and

its subtenants to recover possession of lot 17. Ten months later, plaintiff and Post entered into a stipulation of settlement by which Post acknowledged termination of its lease and its right to occupy the property. On the same date as the settlement, the Post family sold lot 18 to 23 Great Jones L. L. C., a company owned and operated by the Rosenblatt family, whose members were the principals of both plaintiff company and its predecessor. Notwithstanding its month-to-month status as of 1984, Post had given a 15-year lease (for lot 18) and sublease (for lot 17) to the current gas station owner in 1992, and twice renewed the diner's sublease, the second renewal occurring months *after* Post had received the notice of termination.

Having settled its action as against Post, the prime tenant, plaintiff seeks to eject the subtenants and secure the removal of encroaching structures on lot 17, all the while maintaining that its intention is not to affect defendants' use and occupancy of lot 18. Despite plaintiff's insistence that the rights of the diner and the gas station defendants to occupy and conduct business on lot 18 remain wholly undisturbed by this action, the clear consequence, should plaintiff succeed, would be to cut off all access to these businesses as well as to literally cut the diner's structure in half. It cannot seriously be disputed, although it is not dispositive of the matter, that to grant plaintiff the requested relief would be to effectively deprive the subtenants of the ability to conduct business at all and thus to evict them from lot 18 as well, in violation of their valid leases for that property. The issue before the motion court, insofar as this appeal is concerned, was whether under these circumstances plaintiff was entitled to summary judgment to eject said subtenants from and remove the encroachments on lot 17.

Upon review of the record and careful consideration of the relationship among the various parties, we conclude that the IAS Court correctly denied plaintiff such relief at this juncture of the litigation. As the court recognized at the outset of its decision, a sublease is "dependent on and limited by the terms and conditions" of the prime lease; thus, when a prime lease is terminated by operation of its very terms, as here, the rights of any subtenants of the prime tenant also terminate. However, as the IAS Court properly concluded, defendants have demonstrated that they may have equitable defenses to plaintiff's action that defeat plaintiff's otherwise immediate right to recover possession of lot 17 (*see, Miceli v Riley*, 79 AD2d 165, 169) free of encroachments (*see, Hullar v Glider Oil Co.*, 219 AD2d 825). Specifically, both the diner and the gas station defendants claim necessary or implied easements over lot 17 for the bal-

ance of their leases in the adjacent property. While it is not clear upon this record whether defendants will prevail in this regard, we find that sufficient questions have been raised as to the history of the ownership and use of the parcels in question to defeat plaintiff's motion for summary judgment.

"It is well settled that when the owner of a tract of land conveys a part of it to another, he impliedly grants all those apparent and visible easements which at the time of the grant are necessary for the reasonable use of the property granted and which are used by the owner of the entirety for the benefit of the part granted [citations omitted]" (*Buck v Allied Chem. Corp.*, 77 AD2d 782). As demonstrated by both the diner and the gas station defendants, and as is apparently obvious by observation of the properties in question, sole access to their businesses has always been from lot 17. Although the leases and subleases may not include explicit mention of the necessity for access across lot 17, "an existing easement appurtenant will pass to the grantee of a dominant estate even if the deed does not expressly refer to the easement" (*Will v Gates*, 89 NY2d 778, 783, *rearg denied* 90 NY2d 936) and "cannot be extinguished by a conveyance to which [the owner of the dominant estate is] not a party" (*supra,* at 784).

Accordingly, if the easements claimed by defendants existed prior to any of the leases or subleases in question, which may well be the case given the history of the parcels, the mere fact that the prime lease (and therefore the subleases) has expired would not entitle plaintiff to the relief it seeks. Nor is plaintiff entitled to summary judgment because, as it claims, defendants have demonstrated only a unity of possession or control rather than the unity of title required to establish an implied easement (*see, Four S Realty Co. v Dynko*, 210 AD2d 622, 623). In this respect, insufficient proof was presented to the IAS Court concerning how title to the respective lots devolved prior to the interests of the parties to this lawsuit, and how the existing structures came to exist as they are presently situated, with one structure straddling the two lots equally, and access to both structures obviously restricted to lot 17 alone. There is evidence, however, demonstrating that the uses of the property and their necessary encroachments existed long before plaintiff acquired the property, and the very deed upon which plaintiff relies to demonstrate its title to the servient tract contains recitations regarding title to the adjoining property that require further inquiry. While such inquiry may not prove to be sufficient to carry defendants' burden of showing by clear and convincing evidence that the claimed easements exist, we

find that on the record before us sufficient questions of fact have been raised to defeat plaintiff's motion for summary judgment. Concur—Milonas, J. P., Rosenberger, Nardelli, Rubin and Mazzarelli, JJ.